IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
SEP 14 2006
SEP 1 4 2006

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

JOSHUA B. HUPPERT,

Plaintiff,

v.

JOHN E. POTTER, Postmaster
General,

Defendant.

Case No. 05 C 1988

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Joshua Huppert (hereinafter, "Huppert") has brought various claims of employment discrimination against his employer, John Potter (sued in his capacity as Postmaster General of the United States Postal Service)(hereinafter, "Postal Service" or "Defendant"). Specifically, Huppert contends that two of his supervisors within the Postal Service harassed and discriminated against him on account of his alleged physical and mental disabilities, in violation of the Rehabilitation Act, 29 U.S.C. § 791, et seq. Huppert further claims that his supervisors unlawfully retaliated against him for filing multiple union grievances and a formal EEOC charge, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200Ce, et seq. Defendant has moved for summary judgment on all counts. For the reasons set forth below, Defendant's Motion for Summary Judgment is **granted.**

## I.   FACTUAL BACKGROUND

Huppert worked as a letter carrier at a post office facility in Glenview, Illinois from 1985 until September 12, 2001.   Since 1988, Huppert has suffered from persistent foot and back problems. Generally, Huppert's physical condition has interfered with his ability to sit, stand, or walk for prolonged periods, and prevents him from being able to lift heavy objects.  The Postal Service was aware of his physical limitations, and accommodated his medical condition by allowing him, when possible, to alternate between sitting, standing and walking while completing his daily tasks, and exempted him from having to lift objects over twenty pounds. Huppert has also stated that he suffers from depression and an adjustment disorder, which causes him to feel anxious and irritable, and limits his ability to focus and sleep.

In December of 2000, Richard Dwiel ("Dwiel"), who also worked at the Glenview facility, became Huppert's immediate supervisor. Huppert contends that once Dwiel assumed his new role, he began to harass and discriminate against Huppert because of his alleged disabilities.   According to Huppert, Dwiel would assign overly burdensome tasks to Huppert, in disregard of his medical condition, and would ridicule him at work.  When Huppert did not complete his assignments according to Dwiel's expectations, Dwiel would discipline him by issuing letters of suspension.   On various occasions, Huppert sought approval for overtime pay in order to

- 2 -

complete his delivery routes in a timely fashion, but Dwiel routinely denied those requests. Ultimately, whenever Dwiel issued letters of suspension or denied Huppert's requests for overtime, Huppert would file grievances with the USPS Dispute Resolution Team.

In March 2001, Huppert submitted a request for FMLA leave to Robert Slickenmeyer ("Slickenmeyer"), Postmaster of the Glenview facility. Slickenmeyer denied his request, stating that the paperwork submitted by Huppert was insufficient. Again, Huppert filed a grievance to dispute the denial of his FMLA request, which was overturned in Huppert's favor in a settlement procedure.

Huppert claims that shortly after the settlement of his FMLA dispute on July 31, 2001, both Dwiel and Slickenmeyer began to monitor and scrutinize his work performance more closely, issuing unusual and special instruction which made his assignments more difficult. On one occasion in early August, Dwiel and Slickenmeyer refused Huppert's request to get a drink of water or to go to the bathroom without permission. Dwiel also refused Huppert's request to use a gurney to help him load mail onto his delivery truck. Huppert considered the increased supervision and unusual treatment to be retaliation in response to his filing an FMLA appeal and other grievances before the dispute resolution team.

Between August 11 and August 28, 2001, Huppert went on disability leave, during which he contacted the Equal Employment

Opportunity Commission (the "EEOC") to investigate his discrimination claims. Upon his return, Slickenmeyer and Dwiel continued to scrutinize Huppert's job performance, reprimanding Huppert on several occasions for engaging in time-wasting practices. Finally, on September 12, 2001, Dwiel ordered Huppert to open three heavy bundles of mail by holding them with his left arm while sorting through them with his right arm. According to Huppert, during that incident, Dwiel mocked Huppert's medical condition, leading to a heated exchange and prompting Huppert to leave the facility (Huppert claims this amounted to a constructive discharge). Huppert subsequently filed a revised EEOC charge on November 5, 2001, claiming disability discrimination, workplace harassment and retaliation.

## II.  **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view all the evidence and any reasonable inferences

therefrom in the light most favorable to the non-moving party. *See*
*Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir.
2000).

## III. DISCUSSION

### A. Claims Under the Rehabilitation Act

The Rehabilitation Act prohibits an employer from
discriminating against a qualified individual with a disability
because of their disability. *See* 29 U.S.C. § 794(a); *Silk v. City
of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). To establish a
*prima facie* case under the Rehabilitation Act, a plaintiff must
show that he: (1) suffers from a substantial limitation of a major
life activity (*i.e.*, that he is disabled under the terms of the
statute); (2) is otherwise qualified to perform the essential
functions of his job, with or without reasonable accommodation; and
(3) has suffered an adverse employment decision because of the
disability. *Scheerer v. Potter*, 443 F.3d 916, 918 (7th Cir. 2006).
Because of the similarity between the *prima facie* requirements
under the Rehabilitation Act and the Americans with Disabilities
Act (the "ADA"), the Court utilizes ADA standards and related case
law to determine whether a plaintiff has established his *prima
facie* burden. *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 496
(7th Cir. 1996).

### 1. Huppert Was Not Substantially Limited in a Major Life Activity

A central point of contention between the parties pertains to whether Huppert is disabled within the meaning of the Rehabilitation Act. A plaintiff can prove he is disabled by: (1) demonstrating a physical or mental impairment that substantially limits one or more major life activities; (2) having a record of such impairment; or (3) being regarded as having such an impairment by his employer. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). Huppert claims that his physical and mental impairments substantially limit him in a variety of major life activities, including, standing, sitting, twisting, walking, lifting, and working. The Postal Service argues that none of Huppert's purported impairments limit him to the extent necessary to qualify as a disability. There appears to be no dispute, however, that the activities in which Huppert claims to be restricted are major life activities. *See Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 200 (2002)(noting that walking and performing manual tasks that are central to most people's daily lives are major life activities).

In determining whether an individual is substantially limited for purposes of the Rehabilitation Act, the Court considers the nature, severity, and duration of the impairment. *See Hannah v. County of Cook*, No. 03 C 6648, 2005 WL 1026716, at *3 (N.D. Ill. April 27, 2005)(citing *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 505 (7th Cir. 1998). The limitation must be substantial or

considerable in light of what most people do in their daily lives. *EEOC & Keane v. Sears, Roebuck & Co.*, 417 F.3d 789, 799 (7th Cir. 2005).

Taking these factors into account, no reasonable jury could conclude, based on the evidence Huppert presents, that his impairments qualify as substantial limitations in any major life activity. By Huppert's own admission, he is able to stand or walk for 30 to 40 minutes at a time, and he can lift objects weighing up to twenty pounds. (Def. LR 56.1 Statement ¶¶ 13-14.) Indeed, his daily routine as a letter carrier required him to stand or sit while sorting mail, and then spend several hours on the street delivering the mail. (*Id.* ¶ 15.) If Huppert experienced any pain in his back or feet, he was able to finish his route by periodically taking short breaks. Huppert was also capable of performing other physically demanding household chores without much difficulty. (*Id.* ¶¶ 17, 25.) Outside of work, Huppert frequently played violin in a folk music band, during which he would stand on his feet and move around for extended periods of time. (*Id.* ¶ 16.) In short, Huppert's impairments do not rise to the level of a disability, and courts have routinely found plaintiffs with physical impairments equal to or greater than Huppert's as falling short of the substantial limitations required to be considered disabled for purposes of the Rehabilitation Act. *See Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 951 (7th Cir. 2000)(citing

cases where plaintiffs could not demonstrate substantial impairment as required by the ADA); *Hannah*, 2005 WL 1026716, at *3 (N.D. Ill. April 27, 2005). While the Court is not unsympathetic to the fact that Huppert may experience some pain throughout the work day due to his back and foot condition, he has not provided sufficient evidence from which a jury could conclude that he was substantially limited in any major life activities.

Huppert also claims that he is substantially limited in the activity of working, but this assertion is wholly unsupported by the record and fails to create a genuine issue of fact. Huppert initially contends that his inability to work stems from depression and anxiety, which he describes as mental impairments. Yet, as Huppert acknowledged in the FMLA request he submitted to the Postal Service, his purported mental condition was actually work-related stress. (Def. LR 56.1 Statement ¶ 36 (citing FMLA form dated 8/22/01).) The major life activity of working is not substantially limited if one merely cannot work under a certain supervisor because of anxiety and stress related to his job. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996); *see also Palmer v. Circuit Ct. of Cook Cty., Social Service Dep't.*, 905 F. Supp. 499, 507 (N.D. Ill. 1995)(holding that anxiety and depression brought on by a personality conflict with a supervisor is not a disability). Thus, Huppert cannot rely on an alleged mental

impairment amounting to work-related stress in order to create a disputed factual issue to defeat summary judgment.

Huppert's contention that his physical limitations also substantially limit his ability to work is similarly unavailing. To be substantially limited in working, a plaintiff must be significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *EEOC v. Rockwell International Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2002). Huppert admits that he was able to perform his duties as a mail carrier, and that he has been offered other positions within the Postal Service as well, such as clerking. (Def. LR 56.1 Statement ¶ 27; Huppert Dep. at ¶¶29-30.) He has also worked in the past as a music instructor. (*Id.* ¶¶ 28-29.) Given Huppert's ability to secure other employment, both in the Postal Service and elsewhere, he has failed to demonstrate that he is unable to work in a broad range of jobs and cannot be considered substantially limited in the major life activity of working.

Notwithstanding the severity of his impairments, Huppert contends that he was regarded as disabled by Dwiel and Slickenmeyer. An employee is "regarded as having a disability" if his impairment does not substantially limit a major life activity, but the employer treats the employee as if he had such a

disability. *Sutton*, 527 U.S. at 489. This means that Huppert must demonstrate not only that his supervisors knew of his impairments, but that they believed Huppert to be substantially limited by them, i.e., that his impairments impeded his ability to perform tasks central to a person's daily life. *Id.* at 491; *see also Skorup v. Modern Door Corp.*, 153 F.3d 512, 515 (7th Cir. 1998). In this regard, there is no evidence that either of them knew or should have known that Huppert was so impaired. While Huppert's supervisors were aware that he requested a lifting limitation of twenty pounds, and that he sought permission to alternate between sitting and standing, such task-specific impairments do not create an inference that Huppert's supervisors regarded him as disabled. *See Sutton*, 527 U.S. at 491; *Hannah*, 2005 WL 1026716, at *5 ("The inability to perform a single, particular task does not constitute a substantial limitation on the major life activity of working."). In sum, Huppert fails provide evidence from which a reasonable jury could infer that his physical and mental impairments substantially limited him in any major life activity.

In addition, as discussed more fully below, Huppert also fails to meet the third prong of the *prima facie* test because he has not provided evidence sufficient to show that he was subjected to a hostile work environment or that he suffered any other adverse employment action because of his alleged disabilities. Therefore,

- 10 -

his discrimination claim under the Rehabilitation Act fails for that reason as well.

## 2. Huppert Was Not Subjected to a Hostile Work Environment

In addition to his discrimination claim, Huppert brings a separate claim based the allegation that he was subjected to a hostile work environment. At the outset, it is not entirely clear whether such a claim exists under the ADA or Rehabilitation Act. See Mannie v. Potter, No. 01 C 9097, 2003 WL 21799963, at *7 (N.D. Ill. Aug. 4, 2003). However, the Seventh Circuit has observed that, to the extent such a claim does exist, the standards would mirror claims of hostile work environment under Title VII. Silk, 194 F.3d at 803.

Under Title VII standards, a hostile work environment exists where an employee experiences harassment that is so severe or pervasive as to alter the conditions of employment and create an abusive working environment. Mannie v. Potter, 394 F.3d 977, 982 (7th Cir. 2005). The plaintiff must demonstrate that the workplace was both subjectively and objectively hostile. Id. Whether an environment is hostile can only be determined by considering the surrounding circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

- 11 -

Here, most of the conduct that forms the basis of Huppert's claim consists of vague and unsubstantiated assertions that Dweil and Slickenmeyer ridiculed him and called him derogatory names because of his medical condition. Huppert also contends that he was forced to endure requests from his supervisors that were contrary to his medical restrictions, and was criticized when he could not complete his duties. However, none of these assertions, to the extent there is any factual support for them, is particularly severe or pervasive as to alter the conditions of his employment. With respect to the alleged ridicule and verbal harassment, Huppert provides no evidence, apart from his self-serving assertions, regarding the severity or frequency of his supervisors' alleged conduct. Huppert and Dwiel may have had a personality conflict, but the surrounding circumstances are not indicative of any conduct approaching a hostile work environment. *See Silk*, 194 F.3d 806-08.

With respect to special or conflicting instructions issued by his supervisors, the most egregious example cited by Huppert, indeed, the one prompting his departure, was Dwiel's instruction to hold three bags of mail in one arm while sorting the mail with the other. (Pl. LR 56.1 Statement ¶ 59.) However, given that Huppert frequently requested authorization for overtime pay, Dwiel was attempting to demonstrate proper mail sorting technique so that Huppert could work more efficiently. (Def. LR 56.1 Statement ¶

40.) The instruction was not issued for the purpose of harassment. In any event, even taken as a whole, the conduct of which Huppert complains is simply not the kind of workplace harassment sufficient to prove a hostile work environment. See Mannie, 394 F.3d at 982-83.

## B. Retaliation Claim

As an initial matter, the parties dispute whether Huppert exhausted his administrative remedies regarding his retaliation claim. The Postal Service contends that Huppert only alleged in his revised EEOC complaint that his supervisors retaliated against him in response to his initial EEOC charge, not his union grievances. A plaintiff, however, need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint; all claims set forth in a complaint are cognizable that are like or reasonably related to the allegations of the charge and growing out of such allegations. Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). Thus, even though Huppert's revised EEOC complaint only mentions retaliation based on the initial EEOC charge, the affidavit in his EEOC file describes the alleged retaliatory conduct with more, albeit limited, particularity. This is sufficient for Huppert to have met the exhaustion requirement. See Rush v. McDonald's Corp., 966 F.3d 1104, 1110 (7th Cir. 1992).

- 13 -

To establish a *prima facie* case of retaliation, Huppert must show that: (1) he engaged in statutorily protected expression, i.e., reporting or otherwise opposing conduct prohibited by Title VII, (2) he suffered an adverse employment action, and (3) there is a causal link between his protected expression and the adverse employment action. *See Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1146 (7th Cir. 1997). Huppert contends that he was retaliated against for filing several union grievances and an EEOC charge. However, neither of these claims can withstand summary judgment.

First, with respect to his EEOC charge, Huppert has not shown that his supervisors were even aware of his EEOC charge. Huppert filed that charge while he was on leave in August 2001, and, as he admits, he was not aware whether Dwiel or Slickmeyer knew he had done so at the time he left his position several weeks later. (Def. LR 56.1 Statement ¶ 54.) Yet, even if his supervisors were aware, Huppert suffered no adverse action as a result of his EEOC complaint or his union grievances. Indeed, the only adverse actions cited by Huppert as evidence of retaliation are those listed in support of his hostile work environment claim, namely, verbal harassment and increased scrutiny at work. However, as discussed above, none of his supervisors' conduct in this regard rises to the level of an adverse employment action. An adverse employment action for purposes of retaliation must be materially

- 14 -

adverse. *Ribando v. United Airlines*, 200 F.3d 507, 510-11 (7th Cir. 1999). This includes changes in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Id.* (citing *Burlington Indus. v. Ellerth,* 524 U.S. 742, 761 (1998).) Yet, Huppert suffered nothing along these lines. He refers to several occasions during which he was unfairly reprimanded, but without tangible job consequences accompanying those reprimands, Huppert fails to demonstrate a materially adverse employment action. *See Smart v. Ball State University*, 89 F.3d 437, 442 (7th Cir. 1996). Therefore, the Postal Service is entitled to summary judgment on Huppert's retaliation claim as well.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is **granted.**

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: *September 14, 2006*